# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

GARTH WHITE, JR.,

    *Plaintiff*,

v.

    Civil Action No. ELH-17-1177

DATE TRUCKING, LLC,

    *Defendant*.

## MEMORANDUM OPINION

In this tort case, Garth White, Jr. has sued Date Trucking, LLC ("Date Trucking"), alleging that he suffered severe injuries as a result of Date Trucking's negligence. ECF 2 (Complaint).[1] In particular, plaintiff alleges that while he was working as a yard jockey in Perryville, Maryland, on December 19, 2013, an "unsecured load bar" fell out of a tractor-trailer and knocked him unconscious. *Id.* Plaintiff maintains that defendant was responsible for the tractor-trailer, and that defendant's negligence caused his injuries. *Id.* ¶¶ 5, 12.

Now pending are the parties' cross-motions for summary judgment under Fed. R. Civ. P. 56(a). Plaintiff moves for partial summary judgment on the issue of whether the driver of the truck, Kevin Grantland, was an employee of Date Trucking at the relevant time, under the Federal Motor Carrier Safety Regulations ("FMCSR"), 49 C.F.R. § 390.5. ECF 37 ("White Motion"). The White Motion is supported by four exhibits. Date Trucking opposes the White Motion, and has filed a cross-motion for summary judgment. ECF 40. Date Trucking's combined opposition and cross-motion is supported by a memorandum of law (ECF 40-1)

---

[1] The case was filed in the Circuit Court for Baltimore City on December 11, 2016. Date Trucking removed the case to this Court on April 28, 2017, based on diversity of citizenship. ECF 1 (Notice of Removal), ¶¶ 1, 7; *see* 28 U.S.C. § 1332. Plaintiff is a citizen of Maryland (ECF 1, ¶ 4), defendant is a Pennsylvania LLC (*id.* ¶ 5), all members of which are citizens of Pennsylvania (ECF 5 at 2), and the amount in controversy exceeds $75,000. ECF 2 at 3.

(collectively, "Date Trucking Motion") and six exhibits. The Date Trucking Motion asserts that Date Trucking is not liable for the actions of Grantland, either under the doctrine of "logo liability" or the common law theory of respondeat superior. ECF 40-1. White opposes the Date Trucking Motion, and replied in support of the White Motion. ECF 43 ("White Reply"). Date Trucking replied in support of the Date Trucking Motion. ECF 44 ("Date Trucking Reply").

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall grant the White Motion, and I shall deny the Date Trucking Motion.

## I.    Factual and Procedural Background

The facts underlying the case are largely undisputed. Plaintiff worked as a yard jockey at Perryville Cold Storage. ECF 40-3 (Deposition of Garth White, Jr.) at 3. As a yard jockey, plaintiff's job was to "put trailers to the docks and take them away from the docks and put them in the yard." *Id.* at 4. On December 19, 2013, at about 9:15 P.M., plaintiff "opened the swing doors" on a trailer and "a load lock fell from the trailer and struck him in the head." ECF 37-2 (Personal Injury Statement) at 1. A "load lock," or "load bar," is "a 20-poud metal bar that secure[s] the load" inside a trailer. ECF 40-3 at 12. Plaintiff was knocked unconscious and, after he came to, he was taken by paramedics to a shock trauma center. ECF 37-2 at 1.

The tractor trailer in question was leased to Date Trucking by Kevin F. Grantland, Inc. ("KFG"), pursuant to a "Motor Vehicle Lease And Agreement." ECF 40-6 at 2-4 ("Lease Agreement"); *see also* ECF 37-2 at 1; ECF 37-3 (Bill of Lading). On the date in question, December 19, 2013, it had been driven by Kevin Grantland to Perryville Cold Storage in advance of being loaded with frozen vegetables for a delivery the next day. ECF 40-5 (Deposition of Dolores Long, principal of Date Trucking) at 10. Grantland was driving on behalf of KFG, which owned the trailer. ECF 37-1 (Deposition of Kevin Grantland) at 3, p.6;

ECF 40-6. However, Grantland was not present at the time of the injury to plaintiff. ECF 40-3 at 13.

The Lease Agreement between KFG and Date Trucking provides that KFG is an independent contractor to Date Trucking. *Id.* at 2. However, KFG operated under Date Trucking's Department of Transportation ("DOT") authority, meaning that for all deliveries Date Trucking was the licensed motor carrier. *See* ECF 37-1 at 4, p.13. KFG received 85% of the net revenue from the transportation contracts fulfilled by Date Trucking and carried by KFG; Date Trucking received 15%. ECF 40-6; ECF 37-1 at 4, p.11.

Just under three years after White was injured, White filed suit against Date Trucking in the Circuit Court for Baltimore City. *See* ECF 2. Date Trucking removed the case to this Court. *See* ECF 1. Following some discovery, plaintiff (represented by new counsel, *see* ECF 22) sought to amend his Complaint to add Grantland and KFG as defendants. ECF 31. The Court denied the motion to amend as futile, on the ground that the claims against the new defendants were time-barred. ECF 35. One week later, plaintiff filed the White Motion. ECF 37.[2]

Additional facts are included in the discussion.

## II. Legal Standard

Both parties have moved for partial summary judgment under Fed. R. Civ. P. 56. Under Rule 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents

---

[2] I note that, per the amended Scheduling Order (ECF 39), discovery is ongoing until June 19, 2018.

no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in *Bouchat*) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322-24. Moreover, in resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). However, summary judgment is appropriate if the evidence "is so one-

sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

The judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Moreover, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

When, as here, the parties have filed cross-motions for summary judgment, the court must consider "each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted); *see Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). Simply because both parties have filed for summary judgment does not mean that summary judgment to one party or another is necessarily appropriate. "Both motions must be denied if the court finds that there is a genuine issue of material fact. But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Wright, Miller & Kane, *Federal Practice & Procedure* § 2720, at 336-37 (3d ed. 1998, 2012 Supp.).

### III.    White Motion

#### A.

Plaintiff seeks to establish that Grantland was Date Trucking's employee.  *See* ECF 37 at 1.  However, rather than relying on common law to argue that Grantland is properly classified as an employee, plaintiff asserts that Grantland was a statutory employee under 49 C.F.R. § 390.5, part of the FMCSR.  ECF 37 at 3-4.  That regulation sets out the definitions of various terms for purposes of the FMCSR.

Of relevance here, 49 C.F.R. § 390.5 defines "employee" as follows:

> [A]ny individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety.  Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle) . . . .

Further, "employer" is defined as "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it . . . ."  *Id.*

Plaintiff maintains that Grantland should be considered an employee of Date Trucking under 49 C.F.R. § 390.5, because KFG leased the tractor trailer to Date Trucking; KFG was operating under Date Trucking's DOT authority; and Grantland had been driving the truck.  ECF 37 at 4.

Of import here, plaintiff apparently expects that such a conclusion will result in the liability of Date Trucking for Grantland's alleged negligence.  However, the White Motion offers no case citations relevant to that contention, nor does it explain how or why the definitions section of a particular federal regulation is dispositive of that issue.

Date Trucking marshals three arguments for why 49 C.F.R. § 390.5 does not control as to the issue of Grantland's employment status. First, it suggests that § 390.5 was not "'intended to express any view regarding the issue of one motor carrier's vicarious liability for the negligence of another motor carrier.'" ECF 40-1 at 10 (quoting *Beavers v. Victorian*, 38 F. Supp. 3d 1260, 1271 (W.D. Okla. 2014)). In other words, Date Trucking asserts that § 390.5 has no bearing on the question of tort liability. Second, defendant asserts that because KFG, the owner/lessor of the trailer, is not an individual, the driver, Grantland, should not be considered an employee of Date Trucking under § 390.5. ECF 40-1 at 11. Third, defendant asserts that Grantland should not be considered an employee under the regulation because he was not "operating" the vehicle at the time of the injury, as specified in the regulation. *Id.* at 12.

In the White Reply, plaintiff offers a few more details on his understanding of 49 C.F.R. § 390.5. He asserts that "Section 390.5 was enacted to discourage trucking companies from using the independent contractor argument to manipulate their liability exposure with respect to the public." ECF 43 at 2 (citing *Consumers Cty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 366 (5th Cir. 2002)). In response to defendant's second argument, plaintiff contends: "Courts have found that § 390.5 is applicable to both individuals and sole proprietorships." ECF 43 at 2 (citing *Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469, 475 (5th Cir. 2009)). And, plaintiff points out that "courts have held that an individual does not have to be driving, or even operating, the motor vehicle in order to qualify as an employee under § 390.5." ECF 43 at 2. (citing *Lancer Ins. Co. v. Newman Specialized Carriers, Inc.*, 903 F. Supp. 2d 1272, 1280 (N.D. Ala. 2012)).

**B.**

If plaintiff seeks a determination that 49 C.F.R. § 390.5 controls defendant's tort liability, plaintiff's authorities do not support his conclusion. Significantly, with only one exception, all the cases on which plaintiff relies are insurance cases. In each case, an insurance company sued, on behalf of the insured motor carrier, for a declaratory judgment that the insurer is not liable to the injured person. *See, e.g.*, *Ooida Risk*, 579 F.3d at 471 ("[The motor carrier's] insurer[] brought an action in federal district court to obtain a declaration that it owed no duty to defend or indemnify [the driver] in any underlying negligence suit against [the driver]."); *P.W. & Sons*, 307 F.3d at 364 ("[Insurer] filed a declaratory judgment action in federal district court based on the policy's exclusions relating to liability for injuries to employees."); *Lancer*, 903 F. Supp. 2d at 1276 ("The insurers both seek a declaratory judgment that there is no obligation for them to defend or indemnify [the motor carrier] against the [owner/lessor's] claims in underlying state court litigation.").

Thus, when the courts in the cases cited by plaintiff looked to the FMCSR, they did so not to determine an employment relationship for the purposes of vicarious liability, but because "[t]he Motor Carrier Safety Act and its attendant regulations govern the meaning of terms under insurance policies designed to comply with federal requirements for motor carriers." *Ooida Risk*, 579 F.3d at 473.

The Western District of Oklahoma put it well in *Beavers v. Victorian*, 38 F. Supp. 3d 1260, 1271 (W.D. Okla. 2014). Citing *Schramm v. Foster*, 341 F. Supp. 2d 536, 547 (D. Md. 2004), for the proposition that the Motor Carrier Safety Act and the FMCSR do "not create a private right of action for personal injuries," the court concluded that the question of whether one party was acting as a "motor carrier" in relation to an "employee" "is relevant to the issue of [the

motor carrier's] liability only if there exists a legal basis for attaching liability for personal injuries to that status." *Beavers*, 38 F. Supp. 3d at 1267. But, the court said, *id.*, "Plaintiffs provide no legal authority for the proposition that federal law imposes such liability, and the Court has found none. Instead, the source of liability, if any, must come from state tort law and the common law principles . . . ."

In my view, this interpretation is borne out by the structure of the regulations at issue. Section 390.3 of 49 C.F.R., which uses the terms defined in § 390.5, states, 49 C.F.R. § 390.3(a)(1): "The rules in subchapter B of this chapter are applicable to all employers, employees, and commercial motor vehicles that transport property or passengers in interstate commerce." But, there is no discussion of tort liability in the rules of subchapter B. And, to the best of my knowledge, there is no such discussion elsewhere in the FMCSR.

Similarly, 49 U.S.C. § 31132, one of the authorizing statutes for the regulation in question, defines "employee" and "employer" in terms almost identical to 49 C.F.R. § 390.5. In 49 U.S.C. § 31132(2), it states that "employee" means an operator of a commercial motor vehicle (including an independent contractor when operating a commercial motor vehicle), a mechanic, a freight handler, or an individual not an employer, who . . . . directly affects commercial motor vehicle safety in the course of employment. . . ." "Employer" is defined, *id.* § 31132(3), as "a person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns an employee to operate it . . . ."

Drawing on these definitions, 49 U.S.C. § 31135 lays out the "duties of employers and employees." It states, *id.* at § 31135(a): "Each employer and employee shall comply with

regulations on commercial motor vehicle safety prescribed by the Secretary of Transportation under this subchapter that apply to the employer's or employee's conduct."

It appears that the statutes and the regulations stand for the same principle, i.e., those operating as or on behalf of motor carriers should follow the rules. However, the statutes and regulations do not dictate that state common law is preempted by the definitions of terms used in those rules, nor do they explain how such a regime would function if such an outcome were intended.

In regulating interstate commerce, Congress and the Secretary of Transportation have developed their own methods of ensuring compliance with their rules. *See, e.g.*, 49 C.F.R. § 390.37 ("Any person who violates the rules set forth in this subchapter or part 325 of subchapter A may be subject to civil or criminal penalties."). Their goals and tools are distinct from those developed in state legislatures and courts to give justice to tort victims. It would be a mistake to confuse them.

### C.

Grantland may well fit the definition of "employee" under 49 C.F.R. § 390.5 in relation to Date Trucking. Plaintiff correctly points out that courts, including the Fifth Circuit, have held that "§ 390.5 eliminates the traditional common law distinction between employees and independent contractors for drivers." *P.W. & Sons*, 307 F.3d at 365. But, as noted, the court in that case made clear in its decision that it was construing the terms in the parties' insurance policy. The Fifth Circuit continued, *id.* at 367: "[The driver] was an employee of [the motor carrier] for purposes of the policy's employee exclusions. Because [the driver] is an employee under § 390.5 regardless of whether he would have been considered an employee or an independent contractor at common law, the policy's employee exclusions apply to preclude

coverage in this case." As a result, the court concluded that the driver, who was also the injured plaintiff seeking damages in that case, was excluded from the motor carrier's insurance coverage. *Id.*

As for defendant's assertion that Grantland cannot be an employee of Date Trucking under § 390.5 because KFG is not an individual (ECF 40-1 at 11-12), defendant misreads the regulation, the statute, and the cases it cites. The Fifth Circuit in *Ooida Risk* compared § 390.5 to 49 U.S.C. § 31132(2) (quoted *supra*), and observed that "any inconsistency between the statutory language and the language contained in the regulations must be resolved in favor of the statute." *Ooida Risk*, 579 F.3d at 474-75. It noted that the first clause of the statutory definition of employee—"an operator of a commercial motor vehicle (including an independent contractor when operating a commercial motor vehicle), a mechanic, a freight handler, or an individual not an employer"—contained the disjunctive "or," suggesting that *anyone* operating a commercial motor vehicle is an employee, so long as he is not an employer. *See Ooida Risk*, 579 F.3d at 474. This explanation is logical. The result is that Grantland, who operated a commercial motor vehicle and is not an employer, must be an employee under the FMCSR.

Defendant's last argument is that Grantland should not be considered an employee because "he was not operating [the vehicle] at the time of the incident in which Plaintiff was allegedly injured." This claim is unavailing. As discussed, the FMCSR are unconcerned with negligence. Grantland operated a commercial motor vehicle on behalf of Date Trucking, a motor carrier. *See* ECF 37-1 at 4, p.13. For purposes of the FMCSR, this made him an employee under 40 C.F.R. § 390.5. [3]

---

[3] In any event, Grantland *was* allegedly operating the vehicle when the *negligence* occurred, insofar as the load bar was negligently placed. *See* ECF 2, ¶ 6.

**D.**

Accordingly, I shall grant the White Motion. But, it is a hollow victory. This is because Grantland's employee status under the FMCSR has no bearing on whether Date Trucking is vicariously liable for Grantland's alleged negligence.

Plaintiff also seeks attorneys' fees related to defendant's "bad faith position" on the question of Grantland's employee status under 49 C.F.R. § 390.5. ECF 37 at 4. Plaintiff has no basis for this claim, and offers no authority to support it. This portion of the White Motion shall be denied.

## IV.  Date Trucking Motion

Date Trucking moves for summary judgment "on the grounds that under principles of Maryland common law regarding *respondeat superior*, it is not vicariously liable for the alleged negligence of Kevin Grantland . . . because he was an independent contractor and not an employee at the time of the involved incident." ECF 40-1 at 16. The Date Trucking Motion seeks to preclude liability by striking down two alternate theories: (1) "logo liability" and (2) common law vicarious liability. *Id.* at 17, 22. Although I shall grant the Date Trucking Motion as to common law liability, I shall deny it as to "logo liability."

### A.  Logo Liability

Date Trucking seeks to preempt what it considers to be "another potential basis for finding a statutory employee/employer relationship found in case law, although not raised by Plaintiff." ECF 40-1 at 17. This doctrine, called "logo liability," "placard liability," or "lease liability," concerns another of the FMCSR, which some courts have read as imparting liability to a motor carrier that leases a trailer from an owner/driver. *See* R. Clay Porter & Elenore Cotter

Klingler, *The Mythology of Logo Liability: An Analysis of Competing Paradigms of Lease Liability for Motor Carriers*, 33 Transp. L.J. 1, 2 (2006).

Logo liability, under various names, was derived from a regulation now codified at 49 C.F.R. § 376.12.  That regulation sets out certain provisions required to be contained in any lease entered between the lessor-owner of motor carrier equipment (i.e., a truck) and a lessee-motor carrier.  *Id.*  Subsection (c)(1) of the regulation requires that the lease provide "that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease.  The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 376.12(c)(1).

The regulation was promulgated pursuant to 49 U.S.C. § 14102, which allows the Secretary of Transportation to require, *inter alia*, that any motor carrier "have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier."  49 U.S.C. § 14102(a)(4).  Date Trucking relies heavily on the recent case of *Edwards v. McElliotts Trucking, LLC*, 268 F. Supp. 3d 867 (S.D.W. Va. 2017), for guidance in interpreting this regulation, and urges the Court to do the same.  ECF 40-1 at 17-18.

The *Edwards* decision offers a helpful history of the regulation.  In the 1970s and 1980s, courts "interpreted the regulation to create an irrebuttable 'statutory employment' between carriers and owner-operator lessors that was independent from any state common law definition."  *Edwards*, 268 F. Supp. 3d at 878 (citations omitted).  "Some courts went so far as to

impose strict vicarious liability on carriers for any damage caused by owner-operator lessors while operating a leased vehicle." *Id.*

In 1992, however, the regulation was amended to add a new subsection. *Id.* That new subsection states, 49 C.F.R. § 376.12(c)(4): "Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. § 14102 and attendant administrative requirements."

There has been considerable disagreement as to the effect of subsection (c)(4) on subsection (c)(1). *See* Porter & Klingler, *Mythology*, *supra*, at 17. Some courts still adhere to the "irrebuttable presumption of control" standard (*see, e.g.*, *Zamalloa v. Hart*, 31 F.3d 911, 917 (9th Cir. 1994)); some have found that (c)(4) entirely negates the effect of (c)(1) (*see, e.g.*, *Lohr v. Zehner*, No. 2:12-cv-533, 2014 WL 2504574, at *2-*3 (M.D. Ala. Jun. 3, 2014); *Jett v. Van Eerden Trucking Co., Inc.*, No. 10-cv-1073, 2012 WL 37504, at *4 (W.D. Okla. Jan. 9, 2012)); and a third group splits the difference by adopting a rebuttable presumption of an agency relationship between the motor carrier and the driver. *See, e.g.*, *Delaney v. Rapid Response, Inc.*, 81 F. Supp. 3d 769, 776 (D.S.D. 2015); *see also Edwards*, 268 F. Supp. 3d at 878-79.

Date Trucking urges the Court to adopt this rebuttable presumption standard. *See* ECF 40-1 at 20-21. However, I need not reach this question, because the facts of this case do not appear to match the facts of the cases defendant cites.

In particular, the regulation sets requirements for leases between motor carriers and owner-lessors. Compliant leases would therefore contain a provision stating that "the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the

duration of the lease." However, this provision is *reversed* in Date Trucking's lease with KFG. *See* ECF 40-6 at 4. The Lease Agreement states, *id.*: "Lessor [KFG] shall have responsibility for the use, possession and control of the vehicle during the term hereof." This directly contravenes the requirement of 49 C.F.R. § 376.12(c)(1).

Notably, neither party discusses this discrepancy. Date Trucking does not discuss the Lease Agreement in the course of its logo liability discussion, except to say the following: "[O]f course, in this case there was a lease agreement between Date Trucking and Grantland, Inc. for the lease of vehicles owned by the latter entity . . . ." ECF 40-1 at 17. And, plaintiff does not address defendant's logo liability argument at all.

As indicated, 49 C.F.R. § 376.12(c)(4) provides: "An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. § 14102 and attendant administrative requirements." Here, however, it appears that Date Trucking has *not* complied with the administrative requirements attendant to 49 U.S.C. § 14102. Neither party has suggested the proper outcome under these circumstances. As a result, I cannot make a determination as to Date Trucking's logo liability at this time, and I shall deny the Date Trucking Motion as to this issue.

## B. Common Law Respondeat Superior

Date Trucking also seeks a determination that it is not vicariously liable for the alleged negligence of Kevin Grantland under Maryland law. In Maryland, "[l]itigants may invoke the doctrine of respondeat superior as a means of holding an employer, corporate or otherwise, vicariously liable for the tortious conduct of an employee, where it has been shown that the employee was acting within the scope of the employment relationship at that time." *S. Mgmt. Corp. v. Taha*, 378 Md. 461, 480-81, 836 A.2d 627, 638 (2003).

**1.**

In Maryland, under the doctrine of respondeat superior, "'an employer is ordinarily responsible for the tortious conduct of his employee committed while the servant was acting within the scope of the employment relationship.'" *Barclay v. Briscoe*, 427 Md. 270, 282, 47 A.3d 560, 567 (2012) (quoting *Embrey v. Holly*, 293 Md. 128, 134, 442 A.2d 966, 969 (1982)); *Asphalt & Concrete Services, Inc. v. Perry*, 221 Md. App. 235, 272, 108 A.3d 558, 580 (2015), *aff'd*, 447 Md. 31, 133 A.3d 1143 (2016). The doctrine embodies the principle that, "[b]ecause 'the master holds out his servant as competent and fit to be trusted, . . . he in effect warrants his servant's fidelity and good conduct in all matters within the scope of his employment.'" *Oaks v. Connors*, 339 Md. 24, 30, 660 A.2d 423, 426 (1995) (quoting *Globe Indem. Co. v. Victill Corp.*, 208 Md. 573, 580, 119 A.2d 423, 427 (1956)).

An agency relationship "arises from the manifestation of the principal to the agent that the agent will act on the principal's behalf." *Anderson v. General Cas. Ins. Co.*, 402 Md. 236, 247, 935 A.2d 746, 752 (2007); *see Co. of N. Am. v. Miller*, 362 Md. 361, 373, 765 A.2d 587, 594 (2001). Put another way, "[t]he authority of an agent must come from the principal." *Homa v. Friendly Mobile Manor*, 93 Md. App. 337, 359, 612 A.2d 322, 333 (1992). The Restatement (Second) of Agency (1958) defines "agency" as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Id.* § 1. This definition has been cited favorably by several Maryland appellate decisions. *See, e.g.*, *Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 26-27, 878 A.2d 567, 582-83 (2005); *Green v. H & R Block, Inc.*, 355 Md. 488, 503, 735 A.2d 1039, 1047 (1999); *Jackson v. 2109 Brandywine, LLC*,

180 Md. App. 535, 564, 952 A.2d 304, 321 (2008); *Bowser v. Resh*, 170 Md. App. 614, 632-33, 907 A.2d 910, 921 (2006).

A person may be deemed an agent based on actual authority or apparent authority. Actual authority exists only when "the principal knowingly permits the agent to exercise the authority or holds out the agent as possessing it." *Homa*, 93 Md. App. at 360, 612 A.2d at 333. Actual authority may be express or implied. *See Medical Mut. Liab. v. Mutual Fire*, 37 Md. App. 706, 712, 379 A.2d 739, 742-43 (1977) ("The relation of principal and agent does not necessarily depend upon an express appointment and acceptance thereof, but it may be implied from the words and conduct of the parties and the circumstances."). *See also Heslop v. Dieudonne*, 209 Md. 201, 206, 120 A.2d 669, 672 (1956).

Moreover, an actual agency relationship may be established by written agreement or inference. *Patten v. Board of Liquor*, 107 Md. App. 224, 238, 667 A.2d 940, 947 (1995); *see Citizens Bank of Maryland v. Maryland Indus. Finishing Co. Inc.*, 338 Md. 448, 459, 659 A.2d 313, 318 (1995) ("Actual 'authority to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account.'") (quoting Restatement (Second) of Agency § 26). When a party asserts a claim that is dependent upon an agency relationship created by inference, that party has the burden of proving the existence of the principal-agent relationship, including its nature and its extent. *Hofherr v. Dart Industries, Inc.*, 853 F.2d 259, 262 (4th Cir. 1988); *Schear v. Motel Management Corp. of America*, 61 Md. App. 670, 687, 487 A.2d 1240, 1248 (1985).

Under the equitable doctrine of apparent authority, a principal will be bound by the acts of a person purporting to act for him when "the words or conduct of the principal cause the third

party to believe that the principal consents to or has authorized the conduct of the agent." *Johns Hopkins University v. Ritter*, 114 Md. App. 77, 96, 689 A.2d 91, 96 (1996) (emphasis omitted); *see Klein v. Weiss*, 284 Md. 36, 61, 395 A.2d 126, 140 (1978); *Parker v. Junior Press Printing Service*, 266 Md. 721, 727-28, 296 A.2d 377, 381 (1972); *B. P. Oil Corp. v. Mabe*, 279 Md. 632 (1977); *see also Integrated Consulting Services, Inc. v. LDDS Communications, Inc.*, 996 F. Supp. 470, 475 (D. Md. 1998), *aff'd*, 176 F.3d 475 (4th Cir. 1999) (applying Maryland law).

A similar showing is required to establish agency by estoppel, a situation in which a party "who receives money, or anything of value in the assumed exercise of authority as agent for another, is estopped to deny such authority in criminal prosecutions, as well as in civil actions." 2A C.J.S. Agency § 48. Like apparent authority, "an agency by estoppel can arise only where the principal, through words or conduct, represents that the agent has authority to act and the third party reasonably relies on those representations." *Johns Hopkins*, 114 Md. App. at 96, 689 A.2d at 100.

"Generally, a principal is vicariously liable for the negligence of its agent when the two share a master-servant relationship but not when the agent is merely an independent contractor of the principal." *Hunt v. Mercy Med. Ctr.*, 121 Md. App. 516, 545, 710 A.2d 362, 376 (1998); *see also Appiah v. Hall*, 416 Md. 533, 558, 7 A.3d 536, 551 (2010) ("Generally, an 'employer of an independent contractor is not liable for the negligence of the contractor or his employees.'") (quoting *Rowley v. Baltimore*, 305 Md. 456, 461, 505 A.2d 494, 496 (1986)). In the taxonomy of agents, employee/servants, and independent contractors, a "'master is a species of principal and a servant is a species of agent,'" *Green*, 355 Md. at 509, 735 A.2d at 1051 (quoting Restatement (Second) of Agency § 2 cmt. a), and there are different "species" of independent contractor: those who are agents and those "from an entirely separate genus of 'non-agents.'"

*Brooks v. Euclid Sys. Corp.*, 151 Md. App. 487, 517, 827 A.2d 887, 904, *cert. denied*, 377 Md. 276, 833 A.2d 31 (2003).

Put another way, "all masters are principals and all servants are agents, but only when the level of control is sufficiently high does a principal become a master and an agent a servant." *Green*, 355 Md. at 509, 735 A.2d at 1051. "'Agents who are not servants are regarded as independent contractors.'" *Brooks*, 151 Md. App. at 517, 827 A.2d at 904 (quoting *Sanders v. Rowan*, 61 Md. App. 40, 50, 484 A.2d 1023, 1028 (1984)). But, ""[n]ot all independent contractors are agents. 'A person who contracts to accomplish something for another or to deliver something to another, but who is not acting as a fiduciary for the other, is a non-agent independent contractor.'" *Brady v. Ralph Parsons Co.*, 308 Md. 486, 510 n.26, 520 A.2d 717, 730 n.26 (1987) (citing Restatement (Second) of Agency §§ 2 cmt. b, 14N cmt. b) (internal citations omitted); *accord Brooks*, 151 Md. App. at 517, 827 A.2d at 904.

Maryland courts generally consider five factors to determine whether there is an employer-employee relationship. These criteria include (1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer. *Perry*, 221 Md. App. at 272, 108 A.3d at 580; *see also Mackall v. Zayre Corp*., 293 Md. 221 320, 443 A.2d 98, 103 (1982).

Of the five criteria, "the factor of control stands out as the most important. [The Maryland Court of Appeals has] said, for example, that whether the employer 'has the right to control and direct the employee in the performance of the work and in the manner in which the work is to be done' is the 'decisive,' or 'controlling' test[.]" *Whitehead v. Safway Steel Prods., Inc.*, 304 Md. 67, 77-78, 497 A.2d 803, 809 (1985) (citations omitted). *Accord Chevron, U.S.A.,*

*Inc. v. Lesch*, 319 Md. 25, 33, 570 A.2d 840, 844 (1990) ("The decisive test in determining whether the relation of master and servant exists is whether the employer has the *right to control and direct the servant in the performance of his work and in the manner in which the work is to be done.*") (emphasis in *Lesch*). *See also Balt. Harbor Charters, Ltd. v. Ayd*, 365 Md. 366, 387, 780 A.3d 303, 315-16 (2001) ("'[T]he test in determining whether a person is a servant or an independent contractor is whether the employer has the right of control over the employee in respect to the work to be performed.'") (citation omitted); *Hunt*, 121 Md. App. at 545, 710 A.2d at 376 ("The ultimate test for whether an agent is also a servant is control . . . .").

If a party produces any legally sufficient evidence to prove the existence of an agency or employment relationship, it becomes a question of fact that must be submitted to the fact finder. *Taha*, 378 Md. at 481 n.6, 836 A.2d at 639 n.6 (whether an individual is an employee generally is a question for the jury); *Great Atl. & Pac. Tea Co. v. Imbraguglio*, 346 Md. 573, 590, 697 A.2d 885, 893 (1997) ("Ordinarily, the existence of the employer/employee relationship is a question reserved for the fact finder."); *see Green*, 355 Md. at 505, 735 A.2d at 1048; *Faya v. Almaraz*, 329 Md. 435, 460, 620 A.2d 327, 339 (1993); *see also P. Flanigan & Sons v. Childs*, 251 Md. 646, 653, 248 A.2d 473, 477 (1968) (recognizing that the existence of an agency relationship is ordinarily a question of fact); *Levine v. Chambers*, 141 Md. 336, 343, 118 A. 798, 800 (1922) ("[I]t is not for the court to determine the question of agency *vel non*, but if the testimony as to the fact of the agency tends to prove the existence of that relation, it should be submitted to the jury, who are the exclusive judges of its weight.").

In sum, a "servant is a person who is employed to perform . . . services for another . . . and who, in respect to his physical movements in the performance of the service, is subject to the other's control or right of control." *Globe Indem. Co.*, 208 Md. at 581-82, 119 A.2d at 427;

*accord Green*, 355 Md. at 508-09, 735 A.2d at 1050-51. Conversely, an independent contractor is generally "'free to exercise his own judgment and discretion as to the means and assistants that he may think proper to employ about the work, exclusive of the control and direction, in this respect, of the party for whom the work is being done.'" *Baltimore Harbor Charters*, 365 Md. at 387 n.15, 780 A.2d at 316 n.15. Notably, "'[t]he reservation of some control over the manner in which work is done does not destroy the independent contractor relationship where the contractor is not deprived of his judgment in the execution of his duties.'" *Brooks*, 151 Md. App. at 510, 827 A.2d at 900 (quoting *Schweitzer v. Keating*, 150 F. Supp. 2d 830, 840 (D. Md. 2001)).

However, some tort duties are considered "non-delegable," and "liability for breach of a non-delegable duty is [one] exception to the general rule that one who employs an independent contractor is not liable for the independent contractor's negligence." *Norris v. Ross Stores, Inc.*, 159 Md. App. 323, 335, 859 A.2d 266, 273 (2004); *see also Appiah*, 416 Md. at 559, 7 A.3d at 551; *Norris*, 159 Md. App. at 334-35, 859 A.2d at 273 ("Non-delegable duty is something of a misnomer, as the owner is free to delegate the duty of performance to another, but the owner cannot thereby avoid or delay its liability for the non-performance of the delegated duties."). I make no determination as to whether the duty of care owed to those who might come in contact with Date Trucking's leased tractor trailer, such as plaintiff, is non-delegable.

**2.**

Date Trucking asserts that it "did not maintain significant control over Grantland." ECF 40-1 at 26 (internal quotation marks omitted). Moreover, it contends that the Lease Agreement between Date Trucking and KFG does not suggest any ability to control, and that KFG's use of Date Trucking's DOT authority and insurance was a matter of regulatory compliance rather than

actual influence.  *Id.* at 26-28.  Instead, defendant insists that it only offered KFG the opportunity to transport freight, and provided the details of what to pick up and where to drop off, without dictating "the manner in which the work [was] to be done."  *Id.* at 29-32.  In support of these contentions, Date Trucking submits the depositions of Kevin F. Grantland (ECF 40-4) and Dolores Long (ECF 40-5), as well as the Lease Agreement between KFG and Date Trucking. ECF 40-6.

As noted, the Lease Agreement expressly provides that KFG is an independent contractor to Date Trucking.  *Id.* at 1, 4.  Although this statement is by no means dispositive of the question, *see Injured Workers' Ins. Fund v. Orient Exp. Delivery Serv., Inc.*, 190 Md. App. 438, 459, 988 A.2d 1120, 1132 (2010), other provisions of the Lease Agreement support the conclusion.  For example, the Lease Agreement holds KFG responsible for hiring and compensating drivers, maintaining the vehicle, and paying for fuel, permits, and tolls.  ECF 40-6 at 2-3.  KFG, as Lessor, also agreed to indemnify Date Trucking, the Lessee, for any injury to anyone "who has not been authorized in writing to be in the vehicle by Lessee."  *Id.* at 2.  To the extent that the Lease Agreement requires KFG to perform specific tasks for Date Trucking, such as notifying Date Trucking of any significant delays and mailing bills of lading (*id.*), those requirements concern Date Trucking's interest in its own business and reputation, rather than its ability to control the activities of KFG.[4]

In his Reply, plaintiff compares this case to *Asphalt & Concrete Servs., Inc. v. Perry*, 221 Md. App. at 273, 108 A.3d at 581, in which the Maryland Court of Special Appeals concluded that a factfinder could find an employment relationship where the principal (1) called the agent to reserve his services; (2) worked with the agent directly, rather than with any supervisor; (3)

---

[4] Indeed, as discussed, the Lease Agreement allocates possession and control of the vehicle to KFG, in violation of DOT regulations.  *See* ECF 40-6 at 4; 49 C.F.R. § 376.12.

specified a time and place for a pickup; (4) gave particular instructions about delivery; (5) paid the agent an hourly wage and threatened to withhold that wage in certain circumstances; and (6-7) issued a variety of other specific instructions.

This case is distinguishable, as Date Trucking points out in its Reply. ECF 44 at 3-4. In *Perry*, the agent received much more specific instructions on how to perform his work. *Perry*, 221 Md. App. at 273, 108 A.3d at 581. Moreover, the agent was paid an hourly wage by the principal, and the principal had the ability to hire and fire the agent personally. *Id.* Here, KFG was paid a percentage of the proceeds from its labor, and was required to pay any employees from that amount. *See* ECF 40-6 at 2. These circumstances are more suggestive of an independent contractor relationship. *Cf. Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 305 (4th Cir. 2006) (in the context of the Fair Labor Standards Act, the worker's greater opportunity for profit or loss, as well as the worker's investment in equipment or material, are factors indicating an independent contractor rather than an employee).

Plaintiff cites a 1956 case from the Maryland Court of Appeals, asserting that an employment relationship exists when "use of [an] automobile [is] of such vital importance in furthering the master's business that [the master's] control over it might reasonably be inferred." *Gallagher's Estate v. Battle*, 209 Md. 592, 602, 122 A.2d 93, 97 (1956) (emphasis omitted). However, it appears that Maryland courts have used this principle primarily in the context of the scope-of-employment inquiry, rather than as a factor in whether or not an agent is an employee to begin with. *See, e.g.*, *Barclay*, 427 Md. at 284, 47 A.3d at 568 (discussing whether driving a personal vehicle to work was within the scope of employment); *Sheets v. Chepko*, 83 Md. App. 44, 47-48, 573 A.2d 413, 414-15 (1990) (same). In the absence of a clear command from the

Maryland courts, I shall decline to adopt plaintiff's interpretation of *Gallagher's Estate*, which could render every truck driver an employee of the shipper of the goods he carries.

On the other hand, it is noteworthy that Grantland began working with Date Trucking in 2003. ECF 37-1 at 4. Moreover, at his deposition, Grantland was asked: "[W]hat does it mean to be leased to Date Trucking?" *Id.* at 3, p.9. He answered: "She [i.e., Delores Long] gets my loads, and I basically do what she tells me to do." *Id.*, p.10. And, Date Trucking agreed to "maintain and provide insurance coverage [for KFG] for protection of the public," as required by 49 U.S.C. § 13906(a)(1). *See* ECF 40-6 at 3.[5] Further, Grantland operated under Date Trucking's DOT authority. ECF 37-1 at 3, p.13. And, under the Lease Agreement, KFG was only entitled to contract with other motor carriers on return trips, and only "so long as said contracts do not interfere with the performance of [KFG's] continuing obligations" to Date Trucking. ECF 40-6 at 4.[6]

In the posture of the case, I must construe the facts in favor of plaintiff, and summary judgment is appropriate only if the case presents no genuine issues of material fact. *Harmoosh*, 848 F.3d at 235. In my view, Grantland's deposition testimony, together with the long-term and comparatively exclusive relationship between KFG and Date Trucking, could plausibly lead a factfinder to conclude that Date Trucking had the ability to control KFG and, by extension, Grantland. As a result, I must deny summary judgment on this question at this time.

---

[5] The Lease Agreement cites 49 U.S.C. § 10927, under which the insurance requirement was formerly codified. ECF 40-6 at 3.

[6] Discovery is not yet completed, and new evidence as to the issue of control could theoretically arise. *See* ECF 39 (Scheduling Order).

## V.    Conclusion

For the reasons stated above, I shall GRANT the White Motion, except as to plaintiff's request for attorneys' fees, but acknowledge that this determination does not necessarily have any consequences on the issue of defendant's vicarious liability.  And, I shall DENY the Date Trucking Motion.

An Order follows, consistent with this Memorandum Opinion.


Date:   June 1, 2018                                                    _____/s/_____

                                                                        Ellen Lipton Hollander
                                                                        United States District Judge